## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ROBERT D. HIRSCHLER,** *et al.*                                    **PLAINTIFFS**

**VERSUS**                              **CIVIL ACTION NO. 1:23-CV-00374-HSO-BWR**

**JEFFREY A. BROCHARD,** *et al.*                                 **DEFENDANTS**

### AMENDED COMPLAINT FOR WRONGFUL AND NEGLIGENT FORECLOSURE, NEGLIGENCE IN GENERAL, DECLARATORY JUDGEMENT AND OTHER EQUITABLE RELIEF

**COMES NOW**, the Defendants Jeffrey A. Brochard, Nona E. Brochard, Joe Langlinais,

Doe 1, Doe 2 and Doe 3 by and through their attorney of record, Henry B. Zuber III and files this

their Amended Complaint for Wrongful and Negligent Foreclosure, Negligence in General,

Declaratory Judgement and Other Equitable Relief and for cause would show unto this

Honorable Court the following, to-wit:

### Parties

Halliday, Watkins & Mann, P.C., with its principle place of business located at 376 East

400 South, Suite 300, Salt Lake City, UT 84111. Halliday, Watkins & Mann, P.C. may be

served with process of this Court at the aforementioned address or alternatively, Halliday,

Watkins & Mann, P.C. may be served by process of this Court via United States Certified Mail

pursuant to Miss. R. Civ P. 4. The Registered Agent, Michael Lindsey may be served with

service of process at 117 Fulton Street, Greenwood, Mississippi 38930.

PHH Mortgage Corporation, with its principle place of business  located at 2000

Midlantic Drive, Suite 410-A, Mount Laurel, NJ 08054. PHH Mortgage Corporation may be

served with process of this Court at the aforementioned address or alternatively, PHH Mortgage

Corporation may be served by process of this Court via United States Certified Mail pursuant to

Miss. R. Civ P. 4.  The Registered Agent, Corporation Service Company may be served with

service of process at 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

Mortgage Electronic Registration Systems, Inc., may be served with process of this court

via United States Certified Mail pursuant to Miss. R. Civ P. 4 through their Registered Agent,

CT Corporation Systems at 28 Liberty Street, New York, NY 10005

Ocwen Loan Servicing, LLC., may be served with process of this court via United States

Certified Mail pursuant to Miss. R. Civ P. 4. through their Registered Agent, Corporation Service

Company at 251 Little Falls Drive, Wilmington, DE 19808.

**Jurisdiction**

This Honorable Court has subject matter jurisdiction and personal jurisdiction.

Specifically, there is not complete diversity due to the fact the Hirschlers are counter defendants

along with the defendants PHH and the Law Firm, Halliday, Watkins & Mann, P.C.  There is no

federal question jurisdiction because most and at a minium the substantial component of the

Plaintiffs' claim comes under Mississippi State law and equitable remedies.

**FACTS**
**A.**
**CHAIN OF TITLE & RECORDED INSTRUMENTS**

1.     Jeffrey and Nona Brochard originally acquired the subject property via a Warranty Deed

on May the 24th of 1998.  On May 16th, 2005 Jeffrey A. Brochard and Nona E. Brochard

(hereinafter referred to as the Brochards) executed a Deed of Trust in favor of Encore Credit

Corp.  Said Deed of Trust was filed on May the 19th, 2005 in Deed Book 2278 pages 485-506

and is attached hereto for this Honorable Court's easy review as Exhibit A.  The Deed of Trust

encumbered approximately 4.0437 acres in Vancleave, MS with two (2) houses, one (1) Childrens' playhouse and a large enclosed metal work shed. Said mortgage was for thirty (30) years for the amount of $212,500.00. The Trustee was "Fidelity National Title Company of New York", allegedly a New York Corp. However, with a stated Knoxville, TN address. The Deed of Trust goes on to state under section E that "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lendor's successors and assigns. MERS is the beneficiary under this Security Agreement." On page 3 of the Deed of Trust, it restates the aforementioned language about MERS but at the same time states that the "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale…" Also, at the same time under section 11 on page 10, "all miscellaneous proceeds are hereby assigned to and shall be paid to lender" and not MERS the so-called nominee and/or beneficiary of the Security Agreement. As with the Note, all notices MUST be in writing by first class mail or delivered to the Borrowers' address (see p. 15, pg. 10 of the Deed of Trust). Furthermore, under section 20, page 12 of the Deed of Trust, after notice is provided by either party (in this case notice by the Brochards for Mortgage assistance then notice of Denial by the Defendant(s)), then a "reasonable period" to take corrective action must be provided. Additionally, The Deed of Trust states under p. 22, page 13 that if the power of sale is invoked then the lender SHALL give the Borrower notice of Lender's decision to sell the property as provided in section 15 (written notice by 1st class mail or deliverance).

2.      The corresponding Adjustable-Rate Note (hereinafter referred as the Note) attached

hereto as Exhibit B states an initial interest rate of 7.8% adjustable beginning on June 1, 2007

"and on that day every 6th month thereafter." The interest rate over the life of the loan could

never be less than 7.8% nor greater than 14.8%. As evidenced by both the Deed of Trust and the

Note the Lender is unequivocally "ENCORE CREDIT CORP. A CALIFORNIA

CORPORATION". Pursuant to Section "3. PAYMENTS" of the Note, payments were to be

made to "1833 Alton Parkway, Irvine, CA 92606." Formed in 2001, Encore operated from 2002-

2006 as a brand new national prime lender. Bear Stearns bought Encore in February of 2007. As

is well documented, Bear Stearns was the first major investment bank to collapse in the 2008

Financial Crisis. At all relevant times, the corporate address for Encore was 1833 Alton

Parkway, Irvine CA 92606. The Note pursuant to section 8 required that any notice must be

given to the Brochards by first class mail to their stated address

3.      On May the 27th of 2009, there is an assignment filed in Book 2812, pg. 714 (attached

hereto as Exhibit C) from MERS to "Wells Fargo Bank, N.A. as Trustee for Asset Backed Pass

Through Certificates Series 2006-SHRL1 under the pooling and servicing agreement dated as of

10/1/2006 their successors and/or assigns" of the subject deed of Trust.

4.      On May the 28th of 2009 in book 2813, pg. 238, a substitution of Trustee (attached hereto

as Exhibit D) from Litton Loan Servicing, LP as attorney in fact for Wells Fargo Bank, N.A. as

Trustee for Asset-Backed Pass-Through Certificates Series 2006-SHL! Under the pooling and

service agreement dated Oct. 1, 2006 substituting and appointing Emily Kaye Courteau as the

Trustee for the Deed of Trust at 2278, 485. **There is attached a limited POA from Wells**

**Fargo Bank N.A. to Litton Loan Servicing LP**. **(Emphasis added)**

5.      On May the 21st of 2012 filed in Book 3109, pg. 87 on 2/21/2013, there is an assignment

(attached hereto as Exhibit E) of the subject Deed of Trust from Wells Fargo Bank N.A. to Wells

Fargo Bank, National Association, As Trustee for Citigroup Mortgage Loan Trust, Asset backed

passed through certificates series 2006-SHL1. However, the subject assignment was executed by

a Miss. Leticia N. Arias, the contract manager for Ocwen Loan Servicing, LLC. who allegedly

was the attorney in fact for Wells Fargo Bank N.A. Contrary to the standard practice of law in

MS and as followed in the previous POA from Wells Fargo to Litton Loan servicing LLP, there

is no attached POA document from Wells Fargo Bank N.A. to Ocwen Loan Servicing LLC.

Consequently, the Brochards would demand strict proof thereof and if no such attorney in fact or

power of attorney relationship legally existed then the Brochards affirmatively assert that the

subject foreclosure thereafter is legally null and void.

6.      On February 21st of 2013 filed in Book 1702, pgs. 281-283, there is a Substitution of

Trustee (attached hereto as Exhibit F) by Wells Fargo Bank National Association as Trustee for

Citigroup substituting and appointing Holly Ratcliff of Madison, MS. As with the case of the

previously mentioned assignment, this substitution was executed by an Ellen M. Berke as the

**"contract management coordinator"** for Ocwen Loan Servicing, LLC who allegedly was the

attorney in fact for Wells Fargo Bank, National Association. Once again, contrary to the standard

practice of law in MS and as followed in the previous POA from Wells Fargo to Litton Loan

servicing LLP, there is no attached POA document from Wells Fargo Bank N.A. to Ocwen Loan

Servicing LLC. Consequently, the Brochards would reassert their demand for strict proof thereof

and if no such attorney in fact or power of attorney relationship legally existed then the

Brochards affirmatively assert that the subject foreclosure thereafter is legally null and void.

7.    It appears as though the exact same aforementioned Substitution of Trustee was re-recorded on 2/22/2013 in book 3109, pgs. 274-276 (attached hereto as Exhibit G).

8.    On February the 21st of 2013 filed in Book 3109, pg. 87, there was an assignment (attached hereto as Exhibit H) stating that this assignment is being re-recorded to correct the name of the assignee. The correction was to include "Inc." after Citigroup Mortgage Loan Trust. This correction was simply penciled in on the previous assignment form and re-recorded.

9.    On August the 4th of 2022 filed in book 3928, pgs. 510-511, there is another Substitution of Trustee (attached hereto as exhibit I) whereby PHH Mortgage Corporation (hereinafter called PHH) as "servicer" for Wells Fargo Bank, National Association by and through a Ms. Karen P. Peterkin who coincidentally is also titled as a **"contract management coordinator"** for PHH substituted Halliday, Watkins & Mann, P.C. in place of the Trustee named in the Deed of Trust. However, the original trustee in the original Deed of Trust was substituted in book 3109, pg 274. There is no language unlike the previous substitution of trustee to include "any subsequently appointed substitute Trustee. Consequently, Encore was substituted but Hollie Ratcliff remained as the legal trustee. Also and once again, contrary to the standard practice of law in MS and as followed in the previous POA from Wells Fargo to Litton Loan servicing LLP, there is no attached POA document from Wells Fargo Bank N.A. to PHH Mortgage Corporation. Consequently, the Brochards would reassert their demand for strict proof thereof and if no such attorney in fact or power of attorney relationship legally existed then the Brochards affirmatively assert that the subject foreclosure thereafter is legally null and void. **Simply naming PHH "as servicer" in the Substitution of Trustee document itself does not convey at all any right or interest either legal or otherwise for PHH to act on behalf of Wells Fargo Bank, National Association**.

10.    On the 23rd day of September 2022, the subject property was foreclosed on for $185,000

and in following a Substituted Trustee's Deed (attached hereto as exhibit J) was filed on

10/3/2022 in book 2093, pgs. 367-370 from Halliday, Watkins & Mann, P.C. (improper

trustee/should have been Hollie Ratcliff) to Robert and Sherry Hirschler.  The Brochards

received a letter immediately after the foreclosure dated 10/4/22 in which the Hirschlers offered

to accept $245,245.00 plus Jeffrey Brochard's father's classic '57 Chevy.  Fast forward and the

Hirschler's presently are offering $300,000 to transfer the home back to the Brochards.

## B.
## INTERACTION BETWEEN THE BROCHARDS AND PHH

1.    On 8/1/22, the Brochards tendered and mailed a payment (personal check) to PHH in the

amount of $1,850.00.  The Brochards cannot remember if they ever received a letter from PHH

Mortgage Corporation stating that their house was in foreclosure and was going to be sold on

9/23/2022 and would demand strict proof thereof.  At some point the check never cleared and the

Brochards contacted PHH and was connected to "Agent ID, XUD".  This agent instructed the

Brochards to go to mortgagequestions.com at which time the agent walked the Brochards through

the process for applying for a mortgage assistance.  This agent then stated that she would be

emailing the application and that it needed to be filled out and sent back.  During this

conversation, the agent repeatedly stated that once the application was filled out and sent back

that it would stop everything.  Also, during this conversation the Brochards advised the agent that

they had mailed a payment about a month ago and that it had still not cleared.  The agent looked

into why and then advised the Brochards that PHH was not accepting personal checks "**as of**

**right now**."  This is the first time ever that the Brochards were told that PHH would no longer

accept personal checks.  The Brochards never received any prior notice either verbal or written

about this policy change concerning the tender or payment by personal checks.  The Brochards

received the application, filled it out and faxed it back on 9/8/22. A copy of the application is attached hereto as Exhibit K. They faxed it back because the application stated that was the fastest processing option and they believed it would even be faster than emailing because there would be no need to print it out. The Agent instructed the Brochards repeatedly that everything will and had been stopped and to simply wait to hear back about the application. Not hearing or receiving anything from PHH, the Brochards finally called back on 9/27 and was told that their home had been foreclosed on 9/23/22. PHH instructed the Brochards to call the law firm that conducted the foreclosure. The Brochards called the law firm and was told the same thing about their house being sold and was provided the names of the persons who bought it. On 10/1/22, the Brochards received a letter from PHH dated 9/21/22 confirming that PHH had received the assistance application but that there was insufficient to review it. Said confirmation letter is attached hereto as Exhibit L. However, this very same letter stated "We are here to help! Curtis Walters has been assigned as the relationship Manager and will be the designated representative for resolution inquiries…"

2.      PHH admitted to the Brochards that it received the modification package on 9/14/22. **Contrary to any assertion by PHH, the Brochards to date have never received a copy of any form or type of denial letter**.

## CAUSES OF ACTION AND THE LAW

### A.

## State S.A.F.E Mortgage Act

Under Mississippi State S.A.F.E. Act a state must prohibit an individual from engaging in the business of a loan originator with respect to any dwelling or residential real estate in the state,

unless the individual first registers as a loan originator through and obtains a unique identifier

from the NMLSR. This licensing requirement is accomplished through the MS S.A.F.E.

Mortgage Act codified at Miss. Code Ann. Sections 81-18-1 et. seq. This licensing requirement

is fulfilled by registering and maintaining a valid unique identifier issued by the Nationwide

Licensing System and Registry. At no time was Encore Credit Corp. licensed in the state

pursuant to the aforementioned State Laws. Thus, your Plaintiffs herein the Brochards hereby

petition this Honorable Court for all civil, monetary and equitable remedies and damages

available to them under the State S.A.F.E. Act including but not limited to having the subject

Deed of Trust declared null and void and in following setting aside the subject foreclosure.

## B.
## Remedies Under Equity and Good Conscience

One of the great maxims of Equity upon which is the foundation of our Chancery Court

System is that Equity emphatically abhors a forfeiture and that our Court of Equity is disposed to

seize on slight circumstances to avoid one. Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d

624 (1965). . Fairness does not require a total loss even where like in here the Brochards did not

meet all obligations on time and had paid a substantial sum over the years. One of the slight

circumstances in this case is that the Brochards care for their 85-year-old father/father in law and

three (3) mentally handicapped/challenged brothers/brother in laws at the subject home and that a

Chancellor as the "super guardian" of persons with disabilities has a heightened duty in this case

to avoid a forfeiture. As a point of importance, our Supreme Court has further opined that it is

wise to avoid forfeitures and this doctrine may even apply where a contract mandated forfeiture.

Columbus Hotel Co. v. Pierce, 629 So. 2d 605 ( MS S. Ct. 1993). Furthermore, Mississippi

strictly construes the execution, creation and construction of deeds of trust and land instruments.

Grand Oaks, Inc. v. Cumberland Mgmt. Group, Inc. (In re Cumberland), 276 B.R. 127, 132

(Bankr N.D. Miss 2000); (improper acknowledgment invalidated deed of trust). Consequently,

in following this great maxim the question is what relief in equity and good conscience should be

provided to the Brochards in light of their house and land being forfeited? The Brochards are

seeking the equitable alternative of returning to their position had the forfeiture not occurred as

titled owners with PHH and the trustee Halliday, Watkins & Mann, P.C. reimbursing the

Hirschlers for their out-of-pocket expense.

Setting aside the forfeiture and making PHH and the Trustee liable for the Hirschlers'

loss is based on the following: 1) Halliday, Watkins & Mann, P.C. as Trustee is the agent for

both parties and has the same obligations, duties and responsibilities as the Mortgagee.

Consequently, both parties breached the contractual NOTICE REQUIREMENTS contained in

the original Deed of Trust and Promissory Note as detailed under the Heading Chain of Title and

Recorded Instruments. These Contractual NOTICE REQUIREMENTS are easily seen by way of

a cursory review of the specified instruments. Specifically, the Deed of Trust states that all

notices MUST be in writing by first class mail or delivered to the Borrowers' address (see p. 15,

pg, 10 of the Deed of Trust). Furthermore, under Section 20, page 12 of the Deed of Trust, after

notice is provided by either party (in this case notice by the Brochards for Mortgage assistance

and then also notice if Denial by the Defendant(s)), then a "reasonable period" to take corrective

action must be provided. Additionally, the Deed of Trust states under p. 22, page 13 that if the

power of sale is invoked then the lender SHALL give the Borrower notice of Lender's decision

to sell the property as provided in section 15 (written notice by 1st class mail to deliverance).

action must be provided. Additionally, the Deed of Trust states under p. 22, page 13 that if the power of sale is invoked then the lender SHALL give the Borrower notice of Lender's decision to sell the property as provided in section 15 (written notice by 1ˢᵗ class mail to deliverance). Additionally and specifically, the Promissory Note states that pursuant to section 8 that any notice must be given to the Brochards by first class mail to their stated address. Your Plaintiffs demand strict proof thereof by the Defendants of mailed notice to them of PHH's intent to sell and denial of their assistance request. It is asserted by the Plaintiffs that they did not have "reasonable time" to take corrective action at whatever time PHH denied their assistance application. Furthermore, your Plaintiff's assert that PHH receiving their faxed assistance application on 9/8/22 and at the latest 9/14/22 giving them nine days to consider it before the foreclosure date. How many days does it take to review an application and call the Trustee to stop the foreclosure? Even two (2) days would be enough which is brought up because the confirmation letter from PHH of the assistance application receipt to your Plaintiffs is dated 9/21/22.

Concerning the agency relationship and the legal duties resulting therefrom, the Plaintiffs submit to this court that even a simple glance and/or cursory review of the abstract of title prior to the foreclosure would show a break in the chain due to invalid assignments and substitutions of trustees. As previously discussed, there is an assignment (attached hereto as Exhibit E) of the subject Deed of Trust from Wells Fargo Bank N.A. to Wells Fargo Bank, National Association. However, the subject assignment was executed by a Miss. Leticia N. Arias, the contract manager for Ocwen Loan Servicing, LLC. who allegedly was the attorney in fact for Wells Fargo Bank N.A. Contrary to the standard practice of law in MS and as followed in the previous POA from Wells Fargo to Litton Loan servicing LLP, there is no attached POA document from Wells Fargo

Bank N.A. to Ocwen Loan Servicing LLC. Consequently, the Brochards would demand strict proof thereof and if no such attorney in fact or power of attorney relationship legally existed then the Brochards affirmatively assert that the subject foreclosure thereafter is legally null and void. Similarly, there is a Substitution of Trustee (attached hereto as Exhibit F) by Wells Fargo Bank National Association substituting and appointing Holly Ratcliff of Madison, MS. As with the case of the previously mentioned assignment, this substitution was executed by an Ellen M. Berke as the **"contract management coordinator"** for Ocwen Loan Servicing, LLC who allegedly was the attorney in fact for Wells Fargo bank, National Association. Once again, contrary to the standard practice of law in MS and as followed in the previous POA from Wells Fargo to Litton Loan servicing LLP, there is no attached POA document from Wells Fargo Bank N.A. to Ocwen Loan Servicing LLC. Consequently, the Brochards would reassert their demand for strict proof thereof and if no such attorney in fact or power of attorney relationship legally existed then the Brochards affirmatively assert that the subject foreclosure thereafter is legally null and void. Lastly and the most egregious invalid instrument is the Substitution of Trustee (attached hereto as exhibit I) whereby PHH Mortgage Corporation as "servicer" for Wells Fargo Bank, National Association by and through a Ms. Karen P. Peterkin who coincidentally is also titled as a **"contract management coordinator"** for PHH substituted Halliday, Watkins & Mann, P.C. in place of the Trustee named in the Deed of Trust.

**Simply naming PHH "as servicer" in the Substitution of Trustee document itself does not convey at all any right or interest either legal or otherwise for PHH to act on behalf of Wells Fargo Bank, National Association. There is absolutely nothing in MS Jurisprudence allowing PHH Mortgage Corporation to substitute a deed of trust trustee on behalf of Wells Fargo based solely on the fact that PHH was named a "servicer" in the**

**actual substitution of trustee instrument.  In support, the power to substitute a trustee is**
**personal and confidential and must be specifically granted  Laird v Bethea, 60 So. 2d 526,**
**528 (Miss. 1952) (citing Clarke v. Wilson, 53 Miss. 119, 127 (Miss. 1876)).  It has been said**
**often that the express authority to appoint a substitute trustee must be stated clearly and**
**plainly. *Id.* (citing Webb v. Biles, 6 So. 2d 117 (Miss. 1942)).  Being a servicer, does not meet**
**the specific grant, clear and plain threshold!  In White v. Delta Foundation, Inc., the**
**Mississippi Supreme Court declared that it would not lend its hand to assist a lender guilty**
**of poor draftsmanship which including a servicer as having the ability to substitute a**
**trustee is. White v. Delta Foundation, Inc., 481 So. 2d 329, 335 (Miss. 1985).**

As stated before, the original trustee in the original Deed of Trust was substituted in book
3109, pg 274.  There is no language unlike the previous substitution of trustee to include "any
subsequently appointed substitute Trustee.  Consequently, Encore was substituted but Hollie
Ratcliff remained as the legal trustee.  Also, and once again, contrary to the standard practice of
law in MS and as followed in the previous POA from Wells Fargo to Litton Loan servicing LLP
there is no attached POA document from Wells Fargo Bank N.A. to PHH Mortgage Corporation.
The Brochards would reassert their demand for strict proof thereof and if no such attorney in fact
or power of attorney relationship legally existed then the Brochards affirmatively assert that the
subject foreclosure thereafter is legally null and void.

In Mississippi, a wrongful foreclosure occurs when a foreclosure is conducted
negligently. Curlee v. Wells Fargo Home Mortg., 2007 U.S. Dist. LEXIS 89376, *6-7 (N.D.
Miss. Dec. 5, 2007) (citing Nat'l Mort. Co. v. Williams, 357 So. 2d 934, 935-36 (Miss. 1978))
(emphasis added).  This was a negligent foreclosure by PHH and Halliday, Watkins & Mann,
P.C. because both entities owed the Plaintiffs a duty to review any all paperwork in a timely

manner including the request for assistance and as stated obviously the abstract of title to insure no defects in the chain of title. This duty was breached because had it happened the defects of the aforementioned Assignment and Substitutions of Trustees would have been easily discovered, the Brochards would have had time to take corrective action and the foreclosure would have been stopped and/or delayed. This breach of duty caused your Plaintiffs damages including but not limited to the loss of their home.

The trustee for a deed of trust is highly relevant and is supported by Mississippi law. Miss. Code Ann. § 89-1-43 requires a "cestui que trust", and consequently, there must be a trustee. In Mississippi, a deed of trust vests legal title in the trustee. Wansley v. First Nat'l Bank, 566 So. 2d 1218, 1223 (Miss. 1990). Miss. Code Ann. § 89-1-51 empowers the trustee and creates liability for the trustee. Miss. Code Ann. § 89-1-63 grants the trustee the power of sale. Consequently, if there is an invalid substitution of trustee then the following foreclosure is void.

## C.
## Equitable Remedies Arising from Statements, Discussions and/or Communications Between PHH, it's Agents and/or Employees and the Plaintiffs

During conversations between the plaintiffs and PHH's employee/agent , the agent/employee repeatedly stated that once the application was filled out and sent back that it would stop everything. The Agent instructed the Brochards repeatedly that everything will and had been stopped and to simply wait to hear back about the application. Also, during this conversation the Brochards advised the agent that they had mailed a payment about a month ago and that it had still not cleared. The agent looked into why and then advised the Brochards that PHH was not accepting personal checks "**as of right now**." This is the first time ever that the Brochards were told that PHH would no longer accept personal checks. The Brochards never received any prior notice either verbal or written about this policy change concerning the tender

or payment by personal checks. The nonacceptance of personal checks or western union payment by PHH "as of right now" breached the notice requirements wherein the Plaintiffs should have received written notification in the mail of such an action or decision. Furthermore, PHH by and through it's agents and/or employees instructing the plaintiffs that if they completed and sent in the assistance application then all foreclosure proceedings would be stopped gives rise to additional equitable remedies. Including:

#1 Under Mississippi law, estoppel exists where there is a showing of (1) that the plaintiff has changed his position in reliance upon the conduct of another and (2) that the plaintiff has suffered detriment caused by his change of his position in reliance upon such conduct. Birmingham v. Conger, 222 So.2d 388, 392-393 (Miss. 1969). Your Plaintiffs assert that the facts before this Honorable Court meet the elements of estoppel. Promissory estoppel differs from equitable estoppel in that the representation is promissory rather than as to an existing fact. In this case, the representation is promissory in nature as opposed to an existing fact.

#2 The elements of fraud and negligent misrepresentation are also met by the facts contained in this complaint. The elements of a claim of fraud are well established as follows: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth ( it must be stated that the Plaintiffs are not asserting actual knowledge but ignorance of the truth by PHH's agents/employees), (5) the speaker's interest that it should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

#3 In order to recover in a cause of action based on negligent misrepresentation, the

Plaintiffs must and can prove: (1) a misrepresentation or omission of a fact; *(*2) that the

representation or omission is material or significant; (3) that the person charged with the

negligence failed to exercise that degree of diligence and (expertise the public is entitled to

expect of such persons; (4) that they reasonably relied upon PHH's agent's/employees'

misrepresentation or omission; and (5) that they suffered damages as a direct and proximate

result of such reasonable reliance. Your Plaintiffs herein would assert that the facts meet the

elements of all three (3); estoppel, fraud and negligent representation.

## D.
## The Assignment by MERS and all Assignments
## in the Chain of Title are Void Under State Law

As stated, the subject Deed of Trust states under section E that "MERS" is Mortgage

Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a

nominee for Lender and Lendor's successors and assigns. MERS is the beneficiary under this

Security Agreement." On page 3 of the Deed of Trust, it restates the aforementioned language

about MERS but at the same time states that the "Borrower irrevocably grants and conveys to

Trustee, in trust, with power of sale…" Also, at the same time under section 11 on page 10, "all

miscellaneous proceeds are hereby assigned to and shall be paid to lender" and not MERS the so-

called nominee and/or beneficiary of the Security Agreement.

This language was not drafted by the Brochards and thus should be interpreted in their

favor. Additionally, Mississippi law governs the transfer of real property in MS and not the

U.C.C United States v. Irby, 618 F.2d 352 (5th Cir. 1980). MS Law states, "… when the

indebtedness, or any part thereof, secured by a mortgage, deed of trust, or other lien of record

**SHALL** be assigned by the person appearing by the record to be the **creditor**, he shall be

required by the assignee to enter the fact of the assignment on the margin of the record of the lien…" Miss. Code Ann. Section 89-5-15. MERS is basically an electronic tracking system to make it easier to transfer and track loans, conveyances, instruments etc. There is plenty of case law concerning the status and rights of MERS. However, this is an issue of first impression nationally because no other case involves a state statute that is clear and unambiguous on this subject as is 89-5-15 where the assignment shall be done by the creditor. The plain language of the subject Deed of Trust clearly states that MERS is not the creditor. Consequently, the assignment from MERS to Wells Fargo is not valid thereby making the subject foreclosure wrongful and void.

## E.
## Declaratory Judgement

As a result therein your Defendants request that this Honorable Court issue a Declaratory Judgment declaring that the foreclosure be set aside, the Brochards become the titled owners to the subject land, payment of attorney fees, punitive damages because of gross negligence in that the defendants should have easily ascertained from a cursory review of the recorded instruments that at least one if not three of the instruments were invalid, null and void on their face. This would especially apply to the specified substitution of trustee by PHH as servicer and payment by the defendants to the Hirschlers for their out of pocket expense.

The named defendants are guilty of gross negligence. Specifically, they had a duty to the plaintiffs to exercise reasonable care and at a minimum do a cursory review of all prior recorded instruments to ensure that a proper and legal foreclosure could take place. Such a cursory review of the Assignment at Book 3109, Page 87 and the Substitution of Trustee at Book 1702, Page 281 would reveal that said instruments were invalid due to the lack of a power of attorney by the operating entity and/or individual. This standard practice and procedure was followed and done

in a prior instrument within the chain of title which was the Substitution of Trustee by Litton

Loan Serving LP on behalf of Wells Fargo, N.A. The most egregious action of gross negligence

is foreclosing based upon a "servicer" (of PHH) executing a substitution of trustee to the exact

named Defendant law firm who carried out the foreclosure. Lastly, both party defendants should

have easily recognized that all assignments in the chain of title violated state law by not having

the creditor of record execute the assignment.

**WHEREFORE, PREMISES CONSIDERED,** the Defendants pray that this their

Amended Complaint for Wrongful and Negligent Foreclosure, Negligence in General,

Declaratory Judgement and Other Equitable Relief be filed, and upon hearing hereon this

Honorable Court will grant the relief requested.

If Defendants have prayed for wrong, improper, or insufficient relief, then they pray for

such other relief, either equitable, general or special, to which they may be entitled in the

premises.

**RESPECTFULLY SUBMITTED THIS**, the ____ day of April, 2024.

> **JEFFREY A. BROCHARD, NONA E.
> BROCHARD JOE LANGLINAIS, JOSEPH
> LANGLINAIS DOE 1, DOE 2 AND DOE 3**,
> Defendants
>
> By:    _____
>
> **HENRY B. ZUBER III**, Attorney for Defendants

## CERTIFICATE OF SERVICE

I, Henry B. Zuber III, do hereby certify that on this day I electronically filed the foregoing pleading or other paper with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

**THIS** the 15th day of April, 2024.

/s/Henry B. Zuber III
**HENRY B. ZUBER III**

**Prepared by:**
**Henry B. "Hank" Zuber III**
**ZUBER LAW FIRM, INC.**
6913 Washington Avenue
Ocean Springs, MS  39564
(228) 875-1097 - Office
(228) 400-1404 - Fax
**MSB# 9534**

Search Real Estate Index

https://landrecor.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to select page(s) for printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

Return To:
Gary L. Bales
2112 Bienville Blvd. Bld. A
Return To: Ocean Springs, MS 39564

Encore Credit Corp
1833 Alton Parkway
Irvine, CA 92606

2005 14837 22 PGS

Prepared By:
Encore Credit Corp

1833 Alton Parkway
Irvine, CA 92606

OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE.            $33.00
200514837 BK.2278 PG:485-506
05/19/2005 10:41 AM 22 PGS
LANDERSON,DC Rept#019345

—————[Space Above This Line For Recording Data]—————

DEED OF TRUST
MIN 100180100002149209

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 16, 2005 together with all Riders to this document.
(B) "Borrower" is JEFFREY A BROCHARD, AND NONA E BROCHARD, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Encore Credit Corp. A California Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 1833 Alton Parkway
Irvine, CA 92606

MISSISSIPPI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3025 1/01    214920

-6A(MS) (0205).02

Page 1 of 16    Initials

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT
A
tabbies

Search Real Estate Index

https://landrecor___.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

(D) "Trustee" is Fidelity National Title Corpony of New York, A New York Corporation P.O. Box 3549 Knoxville, TN 37923

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS

(F) "Note" means the promissory note signed by Borrower and dated May 16, 2005
The Note states that Borrower owes Lender two hundred twelve thousand five hundred and 00/100.                                                        Dollars
(U.S. $212,500.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☒ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider    ☒ Other(s) [specify]
                                                        Prepayment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

218528

-6A(MS) (0005).02                    Page 2 of 15                    Form 3025    1/01

Search Real Estate Index

https://landrecor(  .jackson.ms.us/RealEstate/SearchImage.aspx

Case: 30CO1:22-cv-21190-MW   Document #: 28-2   Filed: 05/16/2023   Page 3 of 22

Click checkbox to
select page(s) for
printing.

□ 1 of 22

□ 2 of 22

□ 3 of 22

□ 4 of 22

is a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (sole) as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                          (Type of Recording Jurisdiction)
of JACKSON                                   [Name of Recording Jurisdiction]
SEE 1 EGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".

Parcel ID Number 02405350,100                           which currently has the address of
8700 ROSE RD                                                   [Street]
VANCLEAVE                            [City], Mississippi 39565          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

-6A(MS) (0305).01                          Page 3 of 15

Search Real Estate Index

https://landrecord[...].jackson.ms.us/RealEstate/SearchImage.aspx

Case: 30CO1:22-cv-21190-MW    Document #: 28-2    Filed: 05/16/2023    Page 4 of 22

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(MS) (0810) 07                                    Page 4 of 15                                    214920

Form 3025    1/01

Search Real Estate Index

https://landrecor(   ).jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to select page(s) for printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MISS  6A (MS) (2302).42                    Page 4 of 16                    Form 3025 1/01

Search Real Estate Index

https://landrecor̄ɔ.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

6A(MS) (0701)12                                    Page 6 of 18                    Form 3025   1/01

Search Real Estate Index                                      https://landrecor...o.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to select page(s) for printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MISS.-SA(MS) (0811).02                        Page : of 14                        Form 3025    1/01

214820

Search Real Estate Index

https://landrecor(          ).jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(MS) (0811).37                                   Page 8 of 17                              Form 3025  1/01

Search Real Estate Index

https://landrecord.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.

@$D -6A(MS) (0005) 02                    Page 9 of 16                    Initials: JAB reB      214920
Form 3025  1/01

Search Real Estate Index

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MS 6A(MS) 0080.02                                    Page 10 of 15                                    Form 3026 3/01

214920

Search Real Estate Index                                        https://landrecord    .jackson.ms.us/RealEstate/SearchImage.aspx

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

(signature) ℛℯℬ

214820

66D -6A(MS) (0012).22                    Page 11 of 16                    Form 3025 1/01

**Click checkbox to select page(s) for printing.**

□ 1 of 22

□ 2 of 22

□ 3 of 22

□ 4 of 22

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(MS) (0305) 02            Page 12 of 15            Form 3025  1/01

Search Real Estate Index

https://landrecor    o.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 18, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in JACKSON                                     County as Trustee designates in the notice of sale is one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

-6A(MS) (0205) 35                    Page 13 of 16                    Form 3025   1/01

ge)
it

7;

Search Real Estate Index

https://landrecord .jackson.ms.us/RealEstate/SearchImage.aspx

Case: 30CO1:22-cv-21190-MW    Document #: 28-2    Filed: 05/16/2023    Page 14 of 22

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22



Case: 30CO1:22-cv-21190-MW   Document #: 28-2   Filed: 05/16/2023   Page 15 of 22

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

STATE OF MISSISSIPPI,                                    County ss:

On this  16  day of May  2005  , personally appeared before me, the undersigned authority in and for said County and State, the within named JEFFREY A BROCHARD.
NORA E BROCHARD

who acknowledged that he/she/they signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and seal of office.

My Commission Expires:

(Seal)

Notary Public

CD-6A(MS) (0005).01                                    Page 15 of 18

Search Real Estate Index                                                    https://landrecor/ .jackson.ms.us/RealEstate/SearchImage.aspx

Case: 30CO1:22-cv-21190-MW    Document #: 28-2    Filed: 05/16/2023    Page 16 of 22

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

**PREPAYMENT RIDER**

Loan Number: 214920

Date: May 18, 2005

Borrower(s): JEFFREY A BROCHARD

This Prepayment Rider is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of the same date (the "Security Instrument") made by the undersigned, (the "Borrower") as trustor or mortgagor in favor of Encore Credit Corp, A California Corporation (the "Lender").

To the extent that the provisions of the Prepayment Rider are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

Prepayment Covenants. Notwithstanding anything to the contrary set forth in the Security Instrument, Borrower and Lender covenant, and agree, as follows:

Subject to the Prepayment penalty provided below. I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If within Twenty-four (24) months from the date of execution of the Security Instrument I make a full or partial prepayment(s), I will pay a prepayment charge in an amount equal to a percentage of the principal so prepaid in accordance with the following schedule:

If paid during the first year from date hereof, FIVE percent (5.000%) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the second year from date hereof, FOUR percent (4.000%) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the third year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the fourth year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the fifth year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.

Page: 1 of 2                                                    PPR-01MS.UFF

Search Real Estate Index

https://landrecor( .jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

## PREPAYMENT RIDER

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a Partial Prepayment, there will be no change in the due dates on my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Pepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Security Instrument are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**
Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____    _____
JEFFREY A BROCHARD    Date        NONA E BROCHARD    Date

_____    _____
Date        Date

_____    _____
Date        Date

_____    _____
Date        Date

Page: 2 of 2                                    PPR-02MS.UFF

Search Real Estate Index

https://landreco/ :o.jackson.ms.us/RealEstate/SearchImage.aspx

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

## ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 16th day of May, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Encore Credit Corp. A California Corporation.

("Lender") of the same date and covering the property described in the Security Instrument and located at: 8700 ROBB RD, VANCLEAVE, MS 39565

(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.800%. The Note provides for changes in the interest rate and the monthly payments, as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of June, 2007 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

214920

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -Single Family

1409403 (0703)
Page 1 of 4        Initials
VMP MORTGAGE FORMS - (800)521-7291

Search Real Estate Index

https://landrecon   .jackson.ms.us/RealEstate/SearchImage.aspx

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **five and ninety-nine hundredths (s)** percentage points (     **5.990 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.800 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (     **2.000 %**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than     **10.800%** or less than     **7.800 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

14909403 j120x                                   Page 2 of 4

Initial _____

21.8920

Search Real Estate Index                                    https://landrecor   o.jackson.ms.us/RealEstate/SearchImage.aspx

Click checkbox to
select page(s) for
printing.

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18,
"Interest in the Property" means any legal or beneficial interest in the Property, including, but not
limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment
sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a
future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if
Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all sums
secured by this Security Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a)
Borrower causes to be submitted to Lender information required by Lender to evaluate the
intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably
determines that Lender's security will not be impaired by the loan assumption and that the risk of
a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a
condition to Lender's consent to the loan assumption. Lender also may require the transferee to
sign an assumption agreement that is acceptable to Lender and that obligates the transferee to
keep all the promises and agreements made in the Note and in this Security Instrument. Borrower
will continue to be obligated under the Note and this Security Instrument unless Lender releases
Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give
Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from
the date the notice is given in accordance with Section 15 within which Borrower must pay all
sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the
expiration of this period, Lender may invoke any remedies permitted by this Security Instrument
without further notice or demand on Borrower.

214920

1409483 xxxx                              Page 3 of 4

Search Real Estate Index

https://landrecor⟨   ⟩.jackson.ms.us/RealEstate/SearchImage.aspx

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JEFFREY A BROCHARD      -Borrower

_____ (Seal)
NONA E BROCHARD      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
Borrower

214920

1409493 cccc4          Page 4 of 4

Search Real Estate Index

https://landrecc[                ]:o.jackson.ms.us/RealEstate/SearchImage.aspx

Case: 30CO1:22-cv-21190-MW    Document #: 28-2    Filed: 05/16/2023    Page 22 of 22

**Click checkbox to select page(s) for printing.**

☐ 1 of 22

☐ 2 of 22

☐ 3 of 22

☐ 4 of 22

Exhibit "A"

A parcel of land located and being situated in Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi and being more particularly described as follows: Commencing at the NE corner of the SW 1/4 of the NW 1/4 of said Section 5, thence run West a distance of 1-12 feet to the point of beginning; thence run West 370 feet; thence run South 476 feet; thence run East 370 feet; thence run North a distance of 476 feet to the point of beginning. Containing 4.0437 acres. LESS AND EXCEPT any road rights of ways now in existence. Being the same property as conveyed in Deed Book 646 at Page 77 of the land deed records of Jackson County, Mississippi.

Jeffrey A. Brochard

Nona B. Brochard

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

May 16, 2005
[Date]                                      [City]                                      [State]

8700 ROSE RD, VANCLEAVE, MS 39565

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 212,500.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Encore Credit Corp. A California Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.800 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   July 01, 2005                        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2035                        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1833 Alton Parkway, Irvine, CA 92606

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,529.73          . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

214920

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP®-838N (0005) 01          Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials

**EXHIBIT**
B

ß

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of June, 2007                                    , and on that day every 6th      month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding five and ninety-nine hundredth(s)                          percentage points (                          5.990 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                          10.800 % or less than                          7.800%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two                          percentage point(s) (                          2.000 %) from the rate of interest I have been paying for the preceding 6                          months. My interest rate will never be greater than                          14.800% or less than 7.800 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY **See attached Prepayment Addendum

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

214920

-838N (0005) 01

Form 3520 1/01
Initials

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note-Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

214920

-838N (0005) 01

Form 3520 1/01
Initials



**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JEFFREY A. BROCHARD                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                        -Borrower

*[Sign Original Only]*

214920

# PREPAYMENT NOTE ADDENDUM

**Loan Number:** 214920

**Date:** May 16, 2005

**Borrower(s):** JEFFREY A BROCHARD

This Prepayment Note Addendum is incorporated into and shall be deemed to amend and supplement the Note of the same date (the"Note") made by the undersigned (the "Borrower") to evidence indebtedness to Encore Credit Corp A California Corporation (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date

To the extent that the provisions of the Prepayment Addendum To Note (the "Addendum") are inconsistent with the provisions of the Note, the provisions of the Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

Additional **Covenants.** Notwithstanding anything to the contrary Set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree, as follow that the provisions of section Twenty-four of the Note entitled **"BORROWER'S RIGHT TO PREPAY"** are amended to read as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment" When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**If within Twenty-four (24) months from the date of execution of the Security Instrument I make a full or partial prepayment(s), I will pay a prepayment charge in an amount equal to a percentage of the principal so prepaid in accordance with the following schedule:**

**If paid during the first year from date hereof, FIVE percent (5.000%) of the portion of such prepayment equal to the principal amount so prepaid.**

**If paid during the second year from date hereof, FOUR percent (4.000%) of the portion of such prepayment equal to the principal amount so prepaid.**

**If paid during the third year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.**

**If paid during the fourth year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.**

**If paid during the fifth year from date hereof, N/A percent (N/A%) of the portion of such prepayment equal to the principal amount so prepaid.**

PPN-01MS UFF

# REPAYMENT NOTE ADDENDUM

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note If I make a partial Prepayment, there will be no changes in the due dates on my monthly payments unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my Prepayment may reduce the amount on my monthly payments after the first Change Date following my partial Prepayment However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All Other provisions of the Security Instrument are unchanged and remain in full force and effect

## NOTICE TO BORROWER

**Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

| | |
|---|---|
| JEFFREY A BROCHARD                     Date | Date |
| Date | Date |
| Date | Date |
| Date | Date |

PPN-02MS UFF

OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE:      $12.00
#200910745 BK:2812 PG:714-714
05/29/2009 03:32 PM 1 PG
PHILLWOOD,DC Rcpt#007730

200910745 1 PG

Prepared by:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020
Emily Kaye Courteau Bar# 100570

Return To:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020

SW 1/4 of the NW 1/4 of Sec 5, T-7-S, R-7-W, Jackson Co., MS

ASSIGNMENT OF DEED OF TRUST

FOR AND IN CONSIDERATION of the sum of TEN DOLLARS ($10.00), cash in hand paid and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the undersigned Mortgage Electronic Registration Systems, Inc. does hereby sell, convey, and assign to Wells Fargo Bank, N.A. as Trustee for Asset-Backed-Pass-Through Certificates Series 2006-SHL1 under the Pooling and Servicing Agreement dated as of October 1, 2006 their Successors and/or Assigns that certain Deed of Trust executed by Jeffrey A Brochard and Nona E Brochard husband and wife for the use and benefit of Mortgage Electronic Registration Systems, Inc., which Deed of Trust is recorded in Book 2278 at Page 485 Instrument # 200514037,
; and records of the Chancery Clerk of Jackson County, Mississippi, together with the indebtedness secured thereby.
* aka Nora Brochard

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. caused this conveyance to be signed by

Denise Bailey

its    Vice President                                  and its corporate seal to be hereto
affixed, this the _27_ day of _May_ , 20_09_

Mortgage Electronic Registration Systems, Inc.

BY: Denise Bailey
    Vice President

STATE OF _Texas_
COUNTY OF _Harris_

This day personally appeared before me, the undersigned authority in and for the aforesaid jurisdiction,
Denise Bailey                  , who acknowledges that (s) he is the
Vice President                 of Mortgage Electronic Registration Systems, Inc. and that (s) he
executed and delivered the above and foregoing instrument on the day and year therein mentioned, as the act and deed of said corporation, after having first been duly authorized by said corporation, so to do.
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this the _27_ day of _May_ , 20_09_

NOTARY

_3/19/2011_
MY COMMISSION EXPIRES

MONICA HARDAWAY
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/19/2011

EXHIBIT
exhibitr
C

F09-1409

Case: 30CO1:22-cv-21190-MW    Document #: 28-4    Filed: 05/16/2023    Page 1 of 2



200910867 3 PGS

OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE:              $12.00
#200910867 BK:2813 PG:239-240
06/01/2009 03:28 PM 3 PGS
TTIVET,DC Rept#08778S

Prepared by:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020
Emily Kaye Courteau Bar# 100570

Return To:
Morris & Associates
2309 Oliver Road
Monroe, Louisiana 71201
Telephone: 318-330-9020

SW 1/4 of the NW 1/4 of Sec 5, T-7-S, R-7-W, Jackson Co., MS

### SUBSTITUTION OF TRUSTEE

STATE OF MISSISSIPPI
COUNTY OF Jackson

WHEREAS, on the 16th day of May, 2005 and acknowledged on the 16th day of May, 2005, Jeffrey A Brochard and Nona E Brochard, husband and wife executed a Deed of Trust to Fidelity National Title Company of New York, Trustee for the use and benefit of Mortgage Electronic Registration Systems, Inc. beneficiary, which Deed of Trust is on file and of record in the office of the Chancery Clerk of Jackson County, Mississippi, in Deed of Trust Record at Book 2278 at Page 485 Instrument # 200514037 ; and    * NKA Nona Brochard

WHEREAS, the undersigned is the present holder and beneficiary of the Deed of Trust referenced to above; and

WHEREAS, under the terms of said Deed of Trust, the beneficiary or any assignee is authorized to appoint a Trustee in the place and stead of the original Trustee or any successor Trustee in said Deed of Trust; and

NOW, THEREFORE, the undersigned holder of said Deed of Trust does hereby appoint and substitute Emily Kaye Courteau, as Trustee, the said Emily Kaye Courteau, to have all rights, powers and privileges granted the Trustee in said Deed of Trust.

Should the undersigned become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid to convey title to said Foreclosed property to the SECRETARY OF VETERANS AFFAIRS, an officer of the United States of America, or the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, or whosoever the undersigned shall authorize. The statement in the Substitute Trustee's Deed that the undersigned has requested the transfer of its bid to Grantee (s) in the Substitute Trustee's Deed shall be binding on the undersigned and conclusive evidence in favor or the assignee or other parties thereby, and that the Substitute Trustee is duly authorized and empowered to execute the same.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officers on this _____ day of _____, 20___

Litton Loan Servicing, LP as attorney in fact for Wells Fargo Bank, N.A. as Trustee for Asset-Backed Pass-Through Certificates Series 2006-SHL1 under the Pooling and Servicing Agreement dated as of October 1, 2006

BY: Denise Bailey
    Assistant Secretary

STATE OF Texas
COUNTY OF Harris

PERSONALLY came and appeared before me, the undersigned authority in and for the jurisdiction aforesaid, _____ Denise Bailey _____ known personally to me to be the

EXHIBIT
D

F00-1409

Assistant Secretary _____ of the within named Litton Loan Servicing, LP as attorney in fact for Wells Fargo Bank, N.A. as Trustee for Asset-Backed Pass-Through Certificates Series 2006-SHL1 under the Pooling and Servicing Agreement dated as of October 1, 2006 and that (s) he executed and delivered the within and foregoing instrument on the day and year therein mentioned for and on behalf of said corporation, and as its own act and deed for the purposes therein mentioned, having been first duly authorized so to do.

WITNESS my signature and official seal on this, the 28 day of _____ , 20 09

NOTARY PUBLIC

MY COMMISSION EXPIRES: 3/19/2011

MONICA HARDAWAY
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/19/2011

F09-1409

*Please Return to:*
LITTON LOAN SERVICING LP
4828 Loop Central Drive
Houston, Texas 77081-2226
Attn: Alison S. Walas

## LIMITED POWER OF ATTORNEY

Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Minnesota, National Association, (the "Principal") (formerly known as Norwest Bank Minnesota, N.A.), in its capacity as trustee under that certain Servicing Agreement relating to Citigroup Mortgage Loan Trust Asset Backed Pass Through Certificates, Series 2006-SHL1 dated as of October 1. 2006 (the "Agreement") by and among Citigroup Mortgage Loan Trust Inc as ("Depositor") and Litton Loan Servicing LP as ("Servicer") and Wells Fargo Bank, N.A. as (Trustee).

hereby constitutes and appoints:

## LITTON LOAN SERVICING LP

its true and lawful attorney-in-fact (the "Attorney-in-Fact"), acting by and through its officers and employees, with full authority and power to execute and deliver on behalf of Principal any and all of the following instruments to the extent consistent with the terms and conditions of the Agreement:

(i) All documents with respect to residential mortgage loans serviced for Principal by said attorney-in-fact which are customarily and reasonably necessary and appropriate to the satisfaction, cancellation, or partial or full release of mortgages, deeds of trust or deeds to secure debt upon payment and discharge of all sums secured thereby; (ii) Instruments appointing one or more substitute trustees to act in place of the trustees named in Deeds of Trust; (iii) Affidavits of debt, notice of default, declaration of default, notices of foreclosure, and all such contracts, agreements, deeds, and instruments as are appropriate to effect any sale, transfer or disposition of real property acquired through foreclosure or otherwise. (iv) All other comparable instruments.

This Limited Power of Attorney is effective as of the date below and shall remain in full force and effect until revoked in writing by the undersigned or termination of the Agreement, whichever is earlier.

Dated: January 15, 2007

Attest:

By: William W Augustin, IV
Its: Assistant Secretary

Wells Fargo Bank, N.A.,
the Trustee under the Agreement

By: Joshua Kelly
Its: Vice President

Unofficial Witnesses

Angela Moore

Kathy McDonald

STATE OF MARYLAND
COUNTY OF HOWARD                    ss:

On the 15th day of January, 2007 before me, a Notary Public in and for said State, personally appeared Joshua Kelly, known to me to be the Vice President of Wells Fargo Bank, N.A., and also known to me to be the person who executed this Power of Attorney on behalf of said bank, and acknowledged to me that such bank executed this Power of Attorney.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my office seal the day and year written above,

Kathleen A. Dean, Notary Public
My commission expires 2/1/2009

OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE:            $12.00
#201303234 BK:3109 PG:87-87
02/21/2013 04:45 PM 1 PG
BPELTON,DC Rcpt#082793

201303234 1 PG

Prepared By: Nadine Alvarez
When Recorded Mail To:
Ocwen Loan Servicing, Llc
1661 Worthington Road, Suite 100
West Palm Beech, Fl 33409
Phone Number: 561-682-8835

Return To:
Ocwen Loan Servicing, Llc
1661 Worthington Road, Suite 100
West Palm Beach, Fl 33409
Phone Number: 561-682-8835

48709013238721
Attorney Code: 24339   24439    MISSISSIPPI ASSIGNMENT OF DEED OF TRUST

This ASSIGNMENT OF DEED OF TRUST from WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST, ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby grant, bargain, sell, convey and assign unto the Assignee, all its right, title and interest in and to the following instrument describing land therein, duly recorded in the Office of the Public Records of the Chancery Clerk of JACKSON County, _____ Judicial District, State of MISSISSIPPI, as follows:

Grantor: JEFFREY A. BROCHARD AND NONA E. BROCHARD, WHOSE ADDRESS IS 8700, ROSE ROAD, VANCLEAVE, MS 39565

Trustee: FIDELITY NATIONAL TITLE OF COMPANY OF NEW YORK

Grantee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FORENCORE CREDIT CORP. WHOSE ADDRESS IS PO BOX 2026 FLINT, MI 48501-2026

Document Date: MAY 16, 2005            Recording Date: MAY 19, 2005
Book/Volume/Docket/Liber: 2278        Page/Folio: 485        Instrument No: 200514037
Property address: 8700 ROSE ROAD, VANCLEAVE, MS
Property described as follows:

Together with the debt and claim secured by said Deed of Trust, in the sum of $ 212,500.00 and all monies due or to become due thereunder with the interest thereon.

LEGAL DESCRIPTION:

A parcel of land located and being situated in Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi and being more particularly described as follows: Commencing at the NE corner of the SW 1/4 of the NW 1/4 of said Section 5, thence run West a distance of 132 feet to the point of beginning; thence run West 370 feet; thence run South 476 feet; thence run East 370 feet; thence run North a distance of 476 feet to the point of beginning. Containing 4.0457 acres. LESS AND EXCEPT any road right of ways now in existence. Being the same property as conveyed in Deed Book 646 at Page 77 of the land deed records of Jackson County, Mississippi.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officers, and its corporate seal to be hereunto fixed on the 21ST day of MAY, 2012.

WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC
BY :
NAME: Leticia N. Arias
ITS:    Contract Manager

ATTEST:
BY:
NAME: Yaneli
ITS:   Contract Manager
STATE OF FLORIDA
COUNTY OF PALM BEACH

Personally appeared before me, the undersigned authority in and for the said county and state, on this 21ST day of MAY, 2012, within my jurisdiction, the within named Leticia N. Arias , who acknowledged to me that (he) (she) is the Contract Manager of Ocwen Loan Servicing, LLC, Attorney Infact For WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 a manager-managed limited liability company, and that for and on behalf of said corporation as manager of said limited liability company, and as the act and deed of said corporation as manager of said limited liability company, and as the act and deed of said limited liability company, (he) (she) executed the above and foregoing instrument, after first having been duly authorized by said corporation and said limited liability company so to do.

(NOTARY PUBLIC)
My commission expires:
5-8-16
(Affix official seal, if applicable)


Notary Public State of Florida
Naomi Smith
My Commission EE 196781
Expires 05/08/2016

EXHIBIT
Σ

3



OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE:        $12.00
#201303235 BK:1702 PG:281-283
02/21/2013 04:45 PM 3 PGS
BPELTON,DC Rcpt#002703

Indexing Instructions: NE corner of the SW1/4 of NW1/4, Section 5, T7S, R7W, Jackson County,

Mississippi

Jauregui & Lindsey, LLC
2110 Devereux Circle
Birmingham, AL 35243
(205) 970-2233

Grantor: Wells Fargo Bank, National
Association, as Trustee for
Citigroup Mortgage Loan
Trust, Asset-Backed Pass-
Through Certificates Series
2006-SHL1
9062 Old Annapolis Road
Columbia, MD 21045
(410) 884-2043
Grantee: Holly Ratcliff

## SUBSTITUTION OF TRUSTEE

WHEREAS, ON May 16, 2005, Jeffrey A. Brochard and Nona E. Brochard EXECUTED A Deed of Trust to Fidelity National Title Company of New York, Trustee for the benefit of Mortgage Electronic Registration Systems, Inc. as nominee for Encore Credit Corp., a California Corporation, which Deed of Trust is recorded in May 19, 2005 at Book 2278, Page 485 in the Office of the Chancery Clerk of the County of Jackson, State of Mississippi, pertaining to the following described property situated in said County and State. To wit:

A parcel of land located and being situated in Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi and being more particularly described as follows: Commencing at the NE corner of the SW 1/4 of the NW 1/4 of said Section 5, thence run West a distance of 112 feet to the Point of Beginning; thence run West 370 feet; thence run South 476 feet; thence run East 370 feet; thence run North a distance of 476 feet to the Point of Beginning. Containing 4.0437 acres. Less and Except any road right of ways now in existence. Being the same property as conveyed in Deed Book 646 at Page 77 of the land deed records of Jackson County, Mississippi.



**EXHIBIT**

tabbies

F

WHEREAS, UNDER THE TERMS OF SAID Deed of Trust, the beneficiary or any subsequent holder of the Note secured by said Deed of Trust is authorized and empowered to appoint and substitute another Trustee in the place and stead of the Trustee named therein, at any time by writing duly signed and acknowledged and recorded in the County in which the premises are located; and

WHEREAS, said Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Asset-Backed Pass-Through Certificates Series 2006-SHL1 is the holder of the note secured by the aforesaid Deed of Trust and now desires to substitute Holly Ratcliff of Madison, Mississippi, in the place and stead of the said original Trustee named in the original deed or any subsequently appointed substitute Trustee; and

NOW THEREFORE, Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Asset-Backed Pass-Through Certificates Series 2006-SHL1 does hereby appoint and substitute Holly Ratcliff, as Trustee in said Deed of Trust in the place and stead of said original Trustee or any subsequently appointed substitute Trustee.

Should the undersigned become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid and convey title to said foreclosed property to whomever the undersigned shall authorize. The statement in the Substitute Trustee's Deed that the undersigned has requested transfer of its bid to Grantee(s) in the Substitute Trustee's Deed shall be binding on the undersigned and conclusive evidence in favor of the assignee or other parties thereby, and the Substitute Trustee is duly authorized and empowered to execute same.

WITNESS THE SIGNATURE OF Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Asset-Backed Pass-Through Certificates Series 2006-SHL1 by Ocwen Loan Servicing, LLC, its attorney-in-fact.

By: _____

Ellen M. Berke

Its:       **Contract Management Coordinator**

STATE OF ___Florida___

COUNTY OF ___Palm Beach___

I, the undersigned authority, a Notary Public in and for said County and in said State, do hereby certify that ___Ellen M. Berke___ whose name as **Contract Management Coordinator** of Ocwen Loan Servicing, LLC as attorney in fact for Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Asset-Backed Pass-Through Certificates Series 2006-SHL1 who acknowledged before me on this day that, being informed of the contents of said conveyance, he/she signed and delivered the foregoing instrument in writing on the day and year mentioned, for and on behalf of said corporation, having first been duly authorized to do so.

GIVEN under my hand, this the ___1st___ day of ___Aug___, 2012.

_____
Notary Public
My Commission Expires: ___       **Chris Helnichen**



Notary Public State of Florida
Chris Helnichen
My Commission EE271207
Expires 03/07/2015

OFFICIAL RECORDS JACKSON COUNTY, MS

Josh Eldridge, Chancery Clerk

Electronically Recorded

RECORDING FEE: $ 38.00

MINERAL TAX: $0.00

# 202016406

BK: 3695   PG: 812 - 812

08/08/2020 12:22:46 PM   1 PG(S)

Receipt # 17007

Prepared By: Nadine Alvarez
When Recorded Mail To:
Ocwen Loan Servicing, Llc
1661 Worthington Road, Suite 100
West Palm Beach, Fl 33409
Phone Number: 561-682-8835

***This assignment of DOT is being re-recorded to correct the name of the assignee***

Return To:
Ocwen Loan Servicing, Llc
1661 Washington Road, Suite 100
West Palm Beach, Fl 33409
Phone Number: 561-682-8835

**MISSISSIPPI ASSIGNMENT OF DEED OF TRUST**

THE ASSIGNMENT OF DEED OF TRUST from WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006, whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 whose address is c/o Ocwen Loan Servicing, LLC 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby grant, bargain, sell, convey and assign unto the Assignee, all its right, title and interest in and to the following instrument describing land therein, duly recorded in the Office of the Public Records of the Chancery Clerk of JACKSON County, _____ Judicial District, State of MISSISSIPPI, as follows:

Grantor: JEFFREY A. BROCHARD AND NONA E. BROCHARD, WHOSE ADDRESS IS 3700, ROSS ROAD, VANCLEAVE, MS 39565

Trustee: FIDELITY NATIONAL TITLE OF COMPANY OF NEW YORK

Grantee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FORENCORE CREDIT CORP, WHOSE ADDRESS IS PO BOX 2026 FLINT, MI 48501-2026

Document Date: MAY 16, 2005    Recording Date: MAY 19, 2005

Book/Volume/Docket/Liber: 1278    Page/Folio: 483    Instrument No: 200514077

Property address: 3700 ROSS ROAD, VANCLEAVE, MS

Property described as follows:

Together with the debt and claim secured by said Deed of Trust, in the sum of $ 212,600.00 and all monies due or to become due thereunder with the interest thereon.

**LEGAL DESCRIPTION:**

[legal description text illegible]

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officers, and its corporate seal to be hereunto fixed on the 21ST day of MAY, 2012.

WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006

BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC
BY : _____
NAME: Leticia N. Arias
ITS: Contract Manager

ATTEST:
BY: _____
NAME: _____
ITS: Contract Manager

STATE OF FLORIDA
COUNTY OF PALM BEACH

Personally appeared before me, the undersigned authority in and for the said county and state, on this 21ST day of MAY, 2012, within my jurisdiction, the within named Leticia N. Arias , who acknowledged to me that (he) (she) is the Contract Manager of Ocwen Loan Servicing, LLC., Attorney Infact For WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-SHL1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 a manager-managed limited liability company, and that for and on behalf of said corporation as manager of said limited liability company, that as the act and deed of said corporation as manager of said limited liability company, and as the act and deed of said limited liability company, (he) (she) executed the above and foregoing instrument, after first having been duly authorized by said corporation and said limited liability company so to do.

NOTARY PUBLIC
My commission expires:
5-6-14
(Affix official seal, if applicable)

EXHIBIT
tabbies
D

OFFICIAL RECORDS JACKSON COUNTY, MS
Josh Eldridge, Chancery Clerk
Electronically Recorded
RECORDING FEE: $ 37.00
MINERAL TAX: $0.00
# 202217553
BK: 3928    PG: 510 - 511
08/04/2022 01:31:39 PM    2 PG(S)
Receipt # 18988

PREPARED BY AND RETURN TO:
GRANTEE:
Halliday, Watkins & Mann, P.C.
244 Inverness Center Drive
Suite 200
Birmingham, AL 35242  MS10024
(801) 355-2886

GRANTOR:
Wells Fargo Bank, National Association, as Trustee for
Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-
Through Certificates Series 2006-SHL1
C/O PHH Mortgage Corporation,
1 Mortgage Way,
Mt. Laurel, NJ 08054

Indexing Instructions: Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi

## SUBSTITUTION OF TRUSTEE

WHEREAS, ON May 16, 2005, Jeffrey A. Brochard and Nona E. Brochard, husband and wife executed a Deed of Trust to Fidelity National Title Company of New York, a New York Corporation, Trustee for the use and benefit of Mortgage Electronic Registration Systems, Inc. beneficiary, as nominee for Encore Credit Corp. A California Corporation, its successors and assigns, which Deed of Trust is on file and of record in the Office of the Chancery Clerk of the County of Jackson County, Mississippi, on May 19, 2005 Document Number 200514037 in Deed of Trust Book 2278, Page 485, pertaining to the following described property situated in said County and State. To wit:

A parcel of land located and being situated in Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi and being more particularly described as follows: Commencing at the NE corner of the SW 1/4 of the NW 1/4 of said Section 5, thence run West a distance of 112 feet to the point of beginning; thence run West 370 feet; thence run South 476 feet; thence run East 370 feet; thence run North a distance of 476 feet to the point of beginning. Containing 4.0437 acres. LESS AND EXCEPT any road right of ways now in existence. Being the same property as conveyed in Deed Book 646 at Page 77 of the land deed records of Jackson County, Mississippi.

WHEREAS, the undersigned is the present holder and beneficiary of the Deed of Trust referred to above; and

WHEREAS, under the terms of said Deed of Trust, the lender or any assignee is authorized to

EXHIBIT

tablees'

H

appoint a Trustee in the place and stead of the original Trustee or any successor Trustee in said Deed of Trust; and

NOW THEREFORE, the undersigned does hereby appoint and substitute Halliday, Watkins & Mann, P.C., as Trustee in said Deed of Trust, the said substituted Trustee, Halliday, Watkins & Mann, P.C., to have all the rights, powers and privileges of the Trustee named in the Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused these presents to be signed on this the 2 day of _August_, 2022.

> PHH Mortgage Corporation as servicer for Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates Series 2006-SHL1
>
> By: _____
> Name: **Karen P. Peterkin**
> Title: **Contract Management Coordinator**

STATE OF FLORIDA                                    )

                                                   :ss.

COUNTY OF PALM BEACH                                )

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this 2 day of _Aug_, 2022, by     **Karen P. Peterkin**                    as Contract Management Coordinator    of PHH Mortgage Corporation as servicer for Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates Series 2006-SHL1, who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public

ALLEN H. ELIJAH
Notary Public - State of Florida
Commission # GG 967136
My Comm. Expires May 18, 2024
Bonded through National Notary Assn.

Name of Notary Public:    **Allen H. Elijah**
Notary Commission Expiration Date: _____
Personally known: ✓
OR Produced Identification: _____
Type of Identification Produced: _____

OFFICIAL RECORDS JACKSON COUNTY
Josh Eldridge
CHANCERY CLERK
RECORDING FEE:   $26.00
#202222613 BK:2893 PG:367-370
10/03/2022 04:31:53 PM  4 PGS
BORGERON,DC Rcpt#24018



202222613  4 PGS

Indexing Instructions: Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi

**THIS INSTRUMENT WAS PREPARED BY:**
**Grantor/Return to:**
Jason Tingle

Halliday, Watkins & Mann, P.C.
244 Inverness Center Drive
Suite 200
Birmingham, AL 35242
(801) 355-2886

**SEND TAX NOTICES TO:**
**Grantee:**
Robert Dean Hirschler and Sherry Rae
Hirschler, JTWRS
2609 Shelby Lane
Ocean Springs, MS 39564
(316) 304-3717

## SUBSTITUTED TRUSTEE'S DEED

WHEREAS, on May 16, 2005, Jeffrey A. Brochard and Nona E. Brochard, husband and wife, executed a deed of trust to Fidelity National Title Company of New York, a New York Corporation, Trustee for the benefit of Mortgage Electronic Registration Systems, Inc. as nominee for Encore Credit Corp. A California Corporation, its successors and assigns, which deed of trust was recorded in the Office of the Chancery Clerk of Jackson County, Mississippi, on May 19, 2005, in Book 2278, Page 485, as Document Number 200514037; and

WHEREAS, Halliday, Watkins & Mann, P.C. was named as Substituted Trustee in said Deed of Trust in the place and stead of said original Trustee or any subsequently appointed substitute Trustee, by instrument recorded in the Chancery Clerk's office on August 4, 2022 in Book 3928, at Page 510, as Entry No. 202217553; and

**EXHIBIT**

I

WHEREAS, default having been made in the terms and conditions of said deed of trust and the entire debt secured thereby, having been declared to be due and payable in accordance with the terms of said deed of trust, and the legal holder of said indebtedness, Wells Fargo Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc., Asset-Backed Pass-Through Certificates Series 2006-SHL1, having requested the undersigned Substituted Trustee to execute the trust and sell land and property in accordance with the terms of said deed of trust for the purpose of raising the sums due thereunder, together with attorney's fees, Substituted Trustee's fees and expenses of sale;

WHEREAS, the undersigned Substituted Trustee, did by an auctioneer, duly empowered by Halliday, Watkins & Mann, P.C., after posting and publication of the Notice of Sale as required by the terms of said deed of trust and the laws of the State of Mississippi attached hereto as Exhibit "A", within legal hours (being between the hours of 11:00 a.m. and 4:00 p.m.), on September 23, 2022, at public outcry offered the hereinafter described property for sale at the Front door of the Jackson County, Courthouse.

WHEREAS, at such sale, Robert Dean Hirschler and Sherry Rae Hirschler, JTWRS bid the sum of $185,000.00; and

WHEREAS, said bid by Robert Dean Hirschler and Sherry Rae Hirschler, JTWRS was the highest bid;

NOW THEREFORE, Halliday, Watkins & Mann, P.C., Substituted Trustee, in consideration of the sum of $185,000.00, does hereby sell and convey unto Robert Dean Hirschler and Sherry Rae Hirschler, JTWRS, 2609 Shelby Lane, Ocean Springs, MS 39564 the following described property located and situated in the County of Jackson, Mississippi, to wit:

A parcel of land located and being situated in Section 5, Township 7 South, Range 7 West, Jackson County, Mississippi and being more particularly described as follows: Commencing at the NE corner of the SW 1/4 of the NW 1/4 of said Section 5, thence run West a distance of 112 feet to the point of beginning; thence run West 370 feet; thence run South 476 feet; thence run East 370 feet; thence run North a distance of 476 feet to the point of beginning. Containing 4.0437 acres. LESS AND EXCEPT any road right of ways now in existence. Being the same property as conveyed in Deed Book 646 at Page 77 of the land deed records of Jackson County, Mississippi.

More commonly known as: 8700 Rose Road, Vancleave, MS 39565.

WITNESS MY SIGNATURE, this the 28ᵗʰ day of September , 2022.

Halliday, Watkins & Mann, P.C.

By: _____
SUBSTITUTED TRUSTEE
By: Jason Tingle

STATE OF ALABAMA )
COUNTY OF SHELBY )

Personally appeared before me, the undersigned authority in and for the said county and state, on this 28ᵗʰ of September , 2022, within my jurisdiction, the within named Jason Tingle who acknowledged to me that he is a Partner of Halliday, Watkins & Mann, P.C., and that for and on behalf said corporation, and as the act and deed, he executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

_____
Notary Public
My commission Expires:  6/10/2026

HANNAH BERRY
Notary Public
Alabama State at Large

Case: 30CO1.22-cv-21190-MW    Document #: 28-6    Filed: 05/16/2023    Page 1 of 4

*faxed 9-8-22*

Account Number:_____

## Mortgage Assistance Application

To avoid delays, please make sure all pages are complete, accurate and signed or initialed where indicated. Submit the complete application, along with the required documentation, to:

| For Fastest Processing | Regular Mail | Online: |
|---|---|---|
| Email: RMA@mortgagefamily.com <br> Fax: 856-917-2848 | PHH Mortgage Services <br> Attn: Mortgage Assistance <br> 1661 Worthington Road, Suite 100B <br> West Palm Beach, FL 33409 | www.mortgagequestions.com <br> www.loansolutioncenter.com |

We will contact the accountholder(s) within five business days to acknowledge receipt and advise if additional information or documentation is required. We will use the information provided to help us identify the assistance the accountholder(s) may be eligible to receive. If help is required to complete this application, please contact us toll-free at 800-750-2518, we are available 8:00am to 8:00pm Monday through Friday ET.

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

• The U.S. Department of Housing and Urban Development (HUD) at 800.569.4287 or www.hud.gov/counseling
• The Consumer Financial Protection Bureau (CFPB) at 855.411.2372 or www.consumerfinance.gov/mortgagehelp

If assistance is needed with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist. These services are provided without charge.

## Accountholder Information

Accountholder's name: __Jeffrey Brochard__

Social Security Number (last4 digits): __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__

Email address: __monabugg@aol.com__

Primary phone number: __228.990-0903__ ☒Cell ☐ Home ☐ Work ☐ Other

Alternate phone number: __228-990.9611__ ☒Cell ☐ Home ☐ Work ☐ Other

Co-accountholder's name: _____

Social Security Number (last4 digits): _____

Email address: _____

Primary phone number: _____ ☐ Cell ☐ Home ☐ Work ☐ Other

Alternate phone number: _____ ☐ Cell ☐ Home ☐ Work ☐ Other

Preferred contact method (choose all that apply): ☐ Cell phone ☐ Home phone ☐ Work phone ☐ Email

*By providing a mobile phone number(s), accountholder(s) are giving Company permission to contact this number about all accounts. The accountholder(s) consent to the use of artificial/pre-recorded voice messages and automatic dialing technology regarding information pertaining to the accounts, including, but not limited to, this request for mortgage assistance. We may be contacted at any time to change this consent.*

Is either accountholder on active duty with the military (including the National Guard and Reserves), the dependent of an accountholder on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes    ☐ No

## Property Information

Property Address: __8700 Kose Road Vancleave, MS 39565__

Mailing address (if different from property address): _____

• The property is currently: ☒ a primary residence ☐ a second home ☐ An investment property

• The property is (select all that apply): ☒ Owner occupied ☐ Renter occupied ☐ Vacant

• I want to: ☒ keep the property ☐ Sell the property ☐ transfer ownership of the property to my servicer ☐ Undecided

Is the property listed for sale? ☐ Yes  ☐ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable.

**EXHIBIT**

J

*Faxed 9-8-22*

Hardship Information                                                    Account Number:

*Please be aware that hardship and income documentation requirements may differ depending on the owner/insurer of your loan. The information requested herein represents the maximum amount of information necessary to complete a mortgage assistance package. If you would like to discuss the requirements for the review, please contact PHH Mortgage Services at 800-750-2518.*

The hardship causing mortgage challenges began on approximately (date) _____ and is believed to be.

☑ Short-term (up to 6 months)
☐ Long-term or permanent (greater than 6 months)
☐ Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ **Unemployment**<br>☐ Unemployed and receiving benefits<br>  ☐ Start and End Dates of Unemployment Benefits<br>    __/__/__ to __/__/__<br>☐ Unemployed and not receiving benefits | ☐ Third party documentation, including receipts of unemployment benefits OR<br>☐ A self-attested Affidavit, stating the start date of unemployment and stating that the homeowner is actively seeking, and is available, for employment |
| ☑ **Reduction in Income: a hardship that has caused a decrease in income due to circumstances outside accountholder's control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay)** | ☐ Pay stubs dated within 90 days that show at least 30 days of year-to-date income OR<br>☐ Two most recent bank statements showing income deposit amounts dated within the last 90 days |
| ☐ **Increase in housing-related expenses: a hardship that has caused an increase in housing expenses due to circumstances outside accountholder's control (e.g., uninsured losses, increased property taxes, HOA special assessment)** | ☐ Not required |
| ☐ **Disaster (natural or man-made) impacting the property or accountholder's place of employment** | ☐ Not required |
| ☐ **Long-term or permanent disability, or serious illness of an accountholder/co-accountholder or dependent family member** | ☐ Written statement from the accountholder, or other documentation verifying disability or illness<br>Note: Detailed medical information is not required, and information from a medical provider is not required |
| ☐ **Divorce or legal separation** | ☐ Final divorce decree or final separation agreement OR<br>☐ Recorded quitclaim deed |
| ☐ **Separation of accountholders unrelated by marriage, civil union, or similar domestic partnership under applicable law** | ☐ Recorded quitclaim deed OR<br>☐ Legally binding agreement evidencing the non-occupying accountholder or co-accountholder has relinquished all rights to the property |
| ☐ **Death of accountholder or death of either the primary or secondary wage earner** | ☐ Death certificate OR<br>☐ Obituary or newspaper article reporting the death |
| ☐ **Distant employment transfer/relocation** | ☐ For active duty service members: Permanent Change of Station (PCS) orders or letter showing transfer<br>☐ For employment transfers/new employment: Pay stubs dated within 90 days which show at least 30 days of year-to-date income from new employer OR Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, AND<br>☐ Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ **Business Failure** | ☐ Federal tax return from previous year including all schedules AND<br>☐ Bankruptcy filing for the business, OR<br>☐ Two months of recent bank statements for the business account evidencing cessation of business activity OR<br>☐ Most recent signed and dated quarterly year-to-date profit and loss statement |
| ☐ **Other – Any hardship not covered above** | ☐ Provide a written explanation describing the details of the hardship and any relevant documentation. |

Page 2

Case: 30CO1:22-cv-21190-MQV-8-Document #: 28-6   Filed: 05/16/2023 — Page 3 of 4

## Accountholder Income

Please enter accountholder(s) income amounts in middle columns.

| INCOME TYPE | Accountholder | Co-accountholder | REQUIRED INCOME DOCUMENTATION |
|---|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ 4000 | $ | ☐ Most recent pay stub and documentation of year-to-date earnings if not on pay stub OR<br>☐ Two most recent bank statements showing income deposit amounts |
| Hire date | / / | / / | |
| Pay frequency | | | ☐ Indicate frequency of pay—(Weekly, Every 2 weeks, Monthly or Twice a month) |
| Self-employment income | $ 4000 | $ | ☐ Two most recent bank statements showing self-employed income deposit amounts OR<br>☐ Most recent signed and dated quarterly or year-to-date profit/loss statement OR<br>☐ Most recent complete and signed business tax return OR<br>☐ Most recent complete and signed individual federal income tax return |
| Unemployment benefit income | $ | $ | ☐ Award letter showing the amount, frequency and duration of benefits |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ | $ | ☐ Two most recent bank statements showing deposit amounts OR<br>☐ Award letters or other documentation showing the amount and frequency of the benefits |
| Non-taxable Social Security or disability income | $ | $ | ☐ Two most recent bank statements showing deposit amounts OR<br>☐ Award letters or other documentation showing the amount and frequency of the benefits |
| Rental income (rents received, less expenses other than mortgage expense) | $ | $ | ☐ Two most recent bank statements demonstrating receipt of rent OR<br>☐ Two most recent deposited rent checks |
| Investment or insurance income | $ | $ | ☐ Two most recent investment statements OR<br>☐ Two most recent bank statements supporting receipt of the income |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan.) | $ | $ | ☐ Two most recent bank statements showing receipt of income OR<br>☐ Other documentation showing the amount and frequency of the income |

## Current Accountholder Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan

| Combined Assets (Round all figures to the nearest dollar) | | Monthly Expenses (Round all figures to the nearest dollar) | |
|---|---|---|---|
| Checking account(s) and cash on hand | $ 500 | Credit Cards/Installment Debt | $ 600 |
| Total $ in Savings Account(s) | $ 150 | Child Support/ Alimony / Dependent Care | $ 0 |
| Money Market, Stocks, Bonds and CDs Value / Amount | $ | Car and Auto/ Food/ Household/ Utilities/ Water/ Sewer/ Phone Expenses | $ 750 |
| Estimated Value of Real Estate Owned | $ 325000 | Homeowner Association Fees (HOA) | $ |
| Other Cash on Hand | $ | Other Loans (excluding Mortgage) | $ |
| Other | $ | Other | $ |
| Assets TOTAL | $ .00 | Expenses TOTAL | $ .00 |

Page 3

Case: 30CO1:22-cv-21190-MW   Document #: 28-6   Filed: 05/16/2023   Page 4 of 4

*Faxed 9-8-22*

Account Number: _____

## Non-Accountholder Income Authorization

IMPORTANT: Company cannot consider non-accountholder income UNLESS this Authorization Form is completed.
A non-accountholder is defined as someone who may live at the accountholder's primary residence but is not on the original mortgage loan/note (and may or may not be on the original security instrument) but whose income is used to support the mortgage payment or monthly expenses.

Note: Without these authorizations, non-accountholder income cannot be considered and may delay our processing of the application.

| Non-Accountholder 1 | Non-Accountholder 2 |
|---|---|
| Non-Accountholder 1 Name _____ | Non-Accountholder 2 Name: _____ |
| Amount contributing toward the mortgage payment | Amount contributing toward the mortgage payment |

I confirm that I contribute toward the mortgage installments and consent to the use of my income for the calculation of monthly income. I will also provide any supporting documentation showing my monthly income as referenced above. I authorize and give permission to the Servicer and their respective agents, to assemble and use a current consumer report, if necessary, as part of the assistance review. I understand that you may collect and record personal information that I submit, including, but not limited to, my name, address and income information. I understand and consent to the disclosure of my personal information to third parties, including, but not limited to, the Servicer and their respective agents, successors and assigns, any investor, insurer, guarantor, state HFA or any HUD-certified housing counselor.

| _____ | ___ / ___ / ___ | _____ | ___ / ___ / ___ |
|---|---|---|---|
| Non-Accountholder 1 Signature | Date (MM/DD/YY) | Non-Accountholder 2 Signature | Date (MM/DD/YY) |

## Accountholder Certification and Agreement

1. It is certified and acknowledged that all of the information in this Mortgage Assistance Application is truthful and the hardship I identified contributed to the need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law. If fraud or misrepresentation of facts is determined, the Servicer may cancel any mortgage assistance offer granted and may pursue foreclosure on the subject property and/or pursue any available legal remedies allowable under federal and state law.

2. If the account was discharged in a Chapter 7 bankruptcy proceeding, or currently entitled to protections or any automatic stay in bankruptcy, the Servicer is providing this application and information about mortgage assistance options at my request and for informational purposes, and not as an attempt to impose personal liability for the debt evidenced by the Note.

3. The accuracy of the accountholder(s) statements may be reviewed by the servicer or an authorized third party*, and the accountholder(s) may be required to provide additional supporting documentation. The accountholder(s) agree to provide the servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

4. It is acknowledged and agreed that the servicer is not obligated to offer assistance based solely on the representations in this document or other documentation submitted in connection with the mortgage assistance request. If a mortgage assistance option is offered, and that option requires an escrow account for payment of taxes and insurance, and the account currently does not have one, it is agreed that the servicer may establish an escrow account.

5. The accountholder(s) consent to the servicer or authorized third party* obtaining a current credit report for the accountholder(s).

6. The accountholder(s) consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal and non-personal information collected during the mortgage assistance process and of any information about any relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law. Personal Information may include but is not limited to: (a) my name, address, telephone number; (b) any Social Security Number; (c) my credit score; (d) my income; and (e) my payment history and information about the account balances and activity. I/We hereby authorize the servicer to release, furnish, and provide information related to my/our account to:

| _____ | _____ | _____ |
|---|---|---|
| Housing Counseling Agency / Other Third Party | Third Party Name & Phone Number | Third Party Email Address |

7. The accountholder(s) agree that the terms of this accountholder certification and agreement will apply to any modification Trial Period Plan, repayment plan, or Forbearance Plan that I may be offered based on this application. If an offer is received for a modification Trial Period Plan or repayment plan, it is agreed that the first timely payment under the plan will serve as acceptance of the plan.

8. A condemnation notice has not been issued for the property.

9. As a condition of completing a Short Sale transaction, all parties will be required to sign an Arm's Length Affidavit as a part of the Short Sale approval. An arm's length transaction is defined as, but not limited to, the sale of the mortgaged premises between parties who are unrelated and unaffiliated by family, marriage or commercial enterprise.

10. Accountholder understands and agrees that, if permitted by investor/program guidelines and allowable under state and federal law, a fee may be assessed to the account in connection with a property valuation.

11. The accountholder(s) consent to being contacted concerning this application for mortgage assistance or any other loan-related matter at any telephone number, including mobile telephone numbers or email addresses. I have provided to the lender, servicer or authorized third party.*

12. Accountholder agrees that the parties listed in number 6 above can obtain, use and share tax return information for purposes of (i) providing an offer: (ii) managing, servicing and insuring, a loan; or (iii) as otherwise permitted by applicable laws, including state/ federal privacy and data security laws. The parties include those listed in number 6 above.

*An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

**BY SIGNING BELOW, I/WE CERTIFY THAT ALL THE INFORMATION CONTAINED HEREIN IS TRUTHFUL**
**I/WE UNDERSTAND AND AGREE WITH THE TERMS OF THIS CERTIFICATION AND AGREEMENT.**

| _____ | ___ / ___ / ___ | _____ | ___ / ___ / ___ |
|---|---|---|---|
| Accountholder Signature | Date (MM/DD/YY) | Co-Accountholder Signature | Date (MM/DD/YY) |

Halliday Watkins & A. N [handwritten]

Name Served X J-al [handwritten]

10 days for research [handwritten]

**PHH**
**MORTGAGE**

recieved 10-1-22 [handwritten]

09/21/2022

1-800 852-8306 [handwritten]

8/29/22 [handwritten]

XW [handwritten]

Account Number: 7090132387

JEFFREY A BROCHARD
8700 ROSE RD
VANCLEAVE, MS 39565

Attorney office 601-355-2886 [handwritten]

## WE RECEIVED THE REQUEST FOR MORTGAGE ASSISTANCE

Agent KCS - Cheryl Jones [handwritten]
865- 703- Bldg 2 [handwritten]
ext. 1 ID# 81012 [handwritten]

6/12 [handwritten]

Dear JEFFREY A BROCHARD

35 pd [handwritten]

We have received the request for mortgage assistance. Unfortunately, due to the scheduled foreclosure sale date, there is insufficient time to complete a review for a Mortgage Assistance Option.

We are here to help! Curtis Walters has been assigned as the Relationship Manager and will be the designated representative for resolution inquiries and submission of documents.

### Account Information

**Account Number: 7090132387**

**Property Address:**

8700 ROSE RD
VANCLEAVE, MS 39565

We are here to help!

Account Relationship Manager:
Curtis Walters
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

For any questions, please **contact us Monday through Friday 8:00am to 9:00pm ET at 800-750-2518 to speak with the assigned Relationship Manager.** If Curtis Walters is not available, another dedicated member of our Home Retention Team will be available to answer any questions. Information concerning this loan may also be found online at www.mortgagequestions.com

Our Customer Care Center may also be contacted at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET.

Sincerely,

*Loan Servicing*

12,000 reinstatment fee [handwritten]

*OCWN_NETTR_LTR*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be su[...] gency if credit obligation terms are not fulfilled.

**EXHIBIT**

K

LS # 2726